RUSSELL, Judge.
The Mobile County Department of Human Resources (DHR) filed a petition alleging that Y.P., age 14, was mentally ill and in need of commitment to the custody of the Alabama Department of Mental Health and Mental Retardation. The referee of the juvenile court conducted a probable cause hearing and, finding such cause to exist, issued an order, which was confirmed by the trial court, that Y.P. be placed in Baycare Hospital pending a final hearing on DHR’s petition. On October 29, 1991, following an ore tenus proceeding, the referee issued findings and a final order, which were also confirmed by the trial court, dismissing DHR’s petition and ordering that custody of Y.P. was to remain with DHR. The court further ordered that Y.P. was to remain at Baycare and then undergo a 30-day evaluation in the adolescent unit at Bryce Hospital as soon as possible.
DHR appeals, contending that the trial court erred in determining that there was not substantial evidence to warrant the involuntary commitment of Y.P. We affirm.
At the outset we note that the trial court in the present case adopted the referee’s findings. A trial court is to accept the findings of a referee or special master unless they are clearly erroneous, and to the extent that the trial court adopts the findings of the referee or master, the same standard applies in appellate review. Rule 53(e)(2), Alabama Rules of Civil Procedure; Hall v. Mazzone, 540 So.2d 1353 (Ala.1988); Burgess Mining & Construction Corp. v. Lees, 440 So.2d 321 (Ala.1983).
Involuntary commitment of a minor or child is effected pursuant to § 12-15-90(a), Ala.Code 1975, which provides:
“The state, any county or municipality or any governmental agency, including, but not limited to, the department of human resources or the department of youth services, or any person, including a parent, legal guardian or other person standing in loco parentis, may petition to have any minor or child, as defined in this chapter, committed to the custody of the state department of mental health and mental retardation on the basis that such minor or child is mentally ill or mentally retarded and as a consequence of such mental illness or mental retardation poses a real and present threat of substantial harm to himself or to others.”
Section 12 — 15—90(i) sets out the prerequisites for commitment and provides that the following elements must be proven by substantial evidence before the trial court may grant such a petition: First, it must be shown that the minor or child sought to be committed is mentally ill and that, as a consequence of such illness, he poses a real and present threat of substantial harm to himself or others. Such a threat must be evidenced by a recent overt act. Moreover, it must be demonstrated that treatment is available for the minor or child or that confinement is necessary to protect against the aforementioned threat of harm. Last, commitment must be shown to be the least restrictive alternative necessary and available for effectively treating the illness of the minor or child. See § 12-15-90(i)(l) to (5).
DHR asserts that there was substantial evidence before the trial court demonstrating that Y.P. met the requirements of involuntary commitment as provided in § 12-15 — 90(i).
*1052 The record shows that Y.P. has been in the legal custody of DHR since 1977. During his early years he resided with relatives, but he developed behavioral problems as he got older and was placed in various residential treatment facilities. He was discharged from two of these facilities for acts of aggression toward the staff. From August 1990 to July 1991 he resided with his aunt; however, this arrangement ended when he threatened the aunt and her child with physical harm. The record also reflects several overt acts of violence, including an incident in 1991 when Y.P. assaulted a classmate with a metal chair, knocking out three of his teeth. In July 1991 Y.P. was picked up by the police for pointing a gun at a girl.
The evidence presented at the hearings included medical testimony from Dr. Charles E. Smith, a psychiatrist who examined and evaluated Y.P. at Baycare, and Dr. Patrick Chau, a psychiatrist who examined and treated Y.P. at Knollwood Hospital, where Y.P. was residing when DHR filed its petition. Based on the record of Y.P.’s treatment by other medical personnel and on observations of Y.P.’s behavior while at Baycare, Dr. Smith diagnosed Y.P. as suffering from “psychosis not otherwise specified,” which he indicated is a mental illness. He testified that, as a result of this illness, Y.P. posed a real and present threat of substantial harm to himself or others and that treatment for the illness was available and necessary. Dr. Chau testified that he diagnosed Y.P. with “schizophrenia not otherwise specified with paranoid feature or conduct feature,” a mental illness. Like Dr. Smith, Dr. Chau believed that Y.P. posed a threat of harm to himself or others and that treatment was available and necessary for Y.P.
Dr. Chau further testified that through a carefully managed program of medication, the staff at Knollwood had, over a period of weeks, stabilized Y.P.’s acute symptoms, including his acts of aggression. He indicated that by “stabilized” he did not mean completely cured, but rather that Y.P. was now able to communicate with his peers in some socially acceptable manner. At the time of the hearing Y.P. was taking 300 milligrams of an anti-psychotic drug once a day, and 300 milligrams of a mood-stabilizing drug four times a day. Dr. Chau and Dr. Smith indicated that they considered this to be a “substantial” amount of medication, but that, in their opinion, it was necessary to prevent the acute symptoms of Y.P.’s illness. Dr. Chau recommended ongoing treatment for Y.P. that included continuation of drug therapy with close adherence to a daily schedule supervised by an understanding monitor with at least some psychiatric training. He also noted the importance of closely regulating Y.P.’s use of the anti-psychotic drug because of its cardiotoxic effect over time.
From an examination of the record, it is apparent that the trial court determined that, while DHR had demonstrated most of the requirements of § 12-15-90(i), DHR had failed to meet its burden of presenting substantial evidence that commitment to the custody of the Department of Mental Health and Mental Retardation was the least restrictive alternative necessary and available for the treatment of Y.P. See § 12-15-90(i)(5). Most of the testimony in this regard was directed to the issue of whether it was necessary that Y.P. be committed to Bryce Hospital, in the custody of the Department of Mental Health and Mental Retardation, or whether Y.P. could receive the treatment he required at some less restrictive facility, while in the custody of DHR. Because it was not satisfied that DHR had examined the available alternatives, the court ordered that Y.P. undergo only a 30-day evaluation at Bryce Hospital, without change of custody. The court stated that following such evaluation, it would hold another hearing regarding placement of Y.P.
Although DHR presented testimony that it had sought placement of Y.P. without success at some sixteen different residential treatment facilities, the record indicates that at the time of the hearing, applications were still pending at five such facilities. The record also shows that DHR failed to reapply to two facilities that had rejected applications for Y.P. in 1990. Carolyn Davis, a DHR social worker, stated *1053 that because a reason frequently given by these facilities for rejecting Y.P. was his history of violence, she believed that the facilities where his applications were pending were unlikely to accept him. However, testimony from Dr. Chau and Dr. Smith indicated that Y.P.’s outbreaks of aggression have been arrested through medication and could remain under control so long as it could be ensured that Y.P. took his medication. While Dr. Smith testified that Y.P. would receive the treatment and structured environment he needed if he were committed to a state mental institution and recommended that Y.P. be committed to Bryce, he acknowledged that his recommendation was based primarily on his understanding that alternative arrangements were unavailable and on Y.P.’s record prior to stabilization of his condition. Dr. Chau also testified to the suitability of Bryce; however, he indicated that he had only a limited knowledge of alternative facilities and stated that a group home or other residential treatment facility less restrictive than Bryce would be suitable if Y.P.’s medication was carefully monitored and he was not exposed to an inappropriate environment.
In view of the foregoing we conclude that the record supports the trial court’s determination that DHR failed to carry its burden of proof regarding alternatives less restrictive than involuntary commitment. Because the findings of the trial court are not clearly erroneous, the court’s judgment is due to be affirmed. Matter of Brown, 513 So.2d 628 (Ala.Civ.App.1987).
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.